IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| THOMAS J. STAUDER, II, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:13-CV-11 |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION TO DENY PETITION FOR
A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

Petitioner THOMAS J. STAUDER, II, filed a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction in Cause No. 21299-C out of the 251st Judicial District Court of Randall County, Texas, for possession of a prohibited weapon. For the reasons set out hereafter, the United States Magistrate Judge is of the opinion petitioner's application for federal habeas corpus relief should be DENIED.

I.
FACTUAL AND PROCEDURAL BACKGROUND

*A. Procedural background*

Petitioner was charged by indictment with "intentionally and knowingly possessing a chemical dispensing device, to-wit: a Tear Smoke CN grenade." Clerk's Record p. 8. Petitioner pled not guilty, and the case was tried to the judge. The judge found petitioner guilty. Punishment was enhanced by two prior felony convictions, and the judge assessed a sentence of

25 years. Clerk's Record p. 96. The judgment was affirmed on appeal. *Stauder v. State*, 2011 WL 1643689, No. 07-10-0221-CR (Tex. App. – Amarillo May 2, 2011). The Texas Court of Criminal Appeals refused the petition for discretionary review. *Stauder v. State*, No. PD-792-11 (Tex. Crim. App. September 21, 2011). Petitioner filed a state habeas corpus application on July 16, 2012, having shown to have signed the application on July 11, 2012. The state habeas corpus application was denied without written order on November 21, 2012. *Ex parte Stauder*, No. WR-60,527-03 (Tex. Crim. App. November 21, 2012).

Petitioner then filed this federal Petition for a Writ of Habeas Corpus with a memorandum in support on January 23, 2013, stating he placed them in the prison mail system on January 16, 2013. Documents 4 and 5. Also before the Court is respondent's answer. Document 30. Petitioner sought and was granted an extension of time to reply to respondent's answer. Documents 31 and 32. However, petitioner did not file a reply.

*B. Evidence at trial*

Petitioner possessed "a device labeled 'Mighty Midget,' a 'Continuous Discharge Tear Smoke CN Grenade' made by Smith & Wesson." *Stauder v. State*, 2011 WL 1643689 at *1. In their opinion the state appellate court observed:

> [A]ppearing of record was the following evidence: 1) to discharge the contents of the "grenade," a pin must be pulled and a plunger pushed after which it will start burning in three seconds, 2) the "grenade" was not to be used indoors given the risk of fire caused by the quantum of heat emanating from the canister once activated, 3) the chemical substance within the "grenade" was for "riot control," that is, the item was "specifically designed for riot control" as opposed to personal defense, 4) the device can be thrown by hand or it can be shot "from various weapons that have been modified to project" it, 5) it can be activated by percussion, that is, it being struck against a hard surface, 6) the content of the "grenade" affects the eye ducts, causes tearing and involuntary closing of the eyes, creates a burning sensation on the skin, "exposed surfaces and . . . moist areas of the body . . .," irritates mucous membranes, causes involuntary coughing and a

"little heaviness in the chest," makes you feel like "you can't breathe," and causes eye tearing, burning to exposed skin, irritation to the nose, coughing, a feeling of inability to breathe, and psychological effects, 7) the heat "produced can catch objects on fire pretty easily" which explained the warning on the item to forego use indoors, 8) the device has caused death, 9) the "grenade" was not known to be "commercially available at [W]almarts or K–Marts or anything like that," 10) law enforcement entities purchase such weapons through a distributor after showing appropriate "credentials and paperwork," 11) there was no control over where the contents of the device spread once activated, 12) the substance disbursed consists of chemical compounds as opposed to "natural product[s]" like cayenne pepper, oleoresin and capsicum which are derived from peppers, 13) the device appeared operative despite its age, 14) the dispensed substance is comparable to tear gas since it causes tearing, 15) the "grenade" is a "device that is manufactured to distribute or disperse a chemical agent," 16) the chemical expert and supervisor of the local police department bomb squad presented as a witness by the State was unaware of any device containing the substance found in this particular "grenade" to be "commercially available for personal defense," 17) the local SWAT unit no longer maintained the device in its inventory due to the deaths associated with it, and 18) the "grenade" canister was approximately five inches tall with a three-inch circumference.

*Id.* "CN" is the chemical in the device petitioner possessed. Reporter's Record Vol. 2, p. 70. Law enforcement and the military use the chemical CS instead of CN, because CS is less dangerous. *Id.* at 72-73. CN and CS are chemical compounds, but pepper spray contains substances derived from peppers — oleoresin and capsicum, or OC. *Id.* at 82. Pepper spray is commercially available. *Id.* at 86.

## II.
## PETITIONER'S ALLEGATIONS

Petitioner appears to contend respondent is holding him in violation of the Constitution and laws of the United States for the following reasons:

1. Petitioner is actually innocent of the offense, because the same and similar smoke grenade chemical dispensing devices are commercially available to the general public for self-defense;

2. The state statute making the chemical dispensing device petitioner possessed illegal violates the Second Amendment and conflicts with federal law;

3.     The state statute's conflict with federal law renders the state statute void under the Supremacy Clause;

4.     Petitioner received ineffective assistance of trial counsel and appellate counsel, because counsel failed to present at trial, in a motion for new trial, and on appeal the exhibits on which petitioner relies in his federal petition to support his claims.

### III.
### STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act, a petitioner may not obtain habeas corpus relief in federal court with respect to any claim adjudicated on the merits in the state court proceedings unless the adjudication of the claim resulted in a decision contrary to or involved an unreasonable application of clearly established federal constitutional law or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

The Texas Court of Criminal Appeals heard and adjudicated on the merits the claims petitioner presents in his federal habeas corpus petition when it denied petitioner's application for state habeas relief without a written order. *Ex parte Stauder*, No. WR-60,527-03; *see Harrington v. Richter*, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Petitioner's burden before this Court is significantly heightened in that petitioner cannot prevail even if he shows the state court's determination was incorrect. Petitioner must also show the state court unreasonably applied federal law or made an unreasonable determination of the facts. *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002).

Petitioner has failed to meet this burden. Further, review of petitioner's claims confirms this petition should be denied. Petitioner asks for an evidentiary hearing. However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the

claim on the merits." *Brumfield v. Cain*, 744 F.3d 918, 926-27 (5th Cir. 2014) (quoting *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2010). Petitioner is not entitled to an evidentiary hearing.

## IV.
## MERITS OF PETITIONER'S ALLEGATIONS

### A. Actual innocence to avoid procedural bar

Petitioner contends the state's answer to his state habeas corpus application argued a procedural bar, and he claims actual innocence in avoidance of a procedural bar. While the state did argue during state proceedings that most of petitioner's state habeas corpus grounds were barred because he raised them on direct appeal, the state also addressed the merits of petitioner's state habeas application (document 20, attachment 11 at p. 99, and attachment 12 at p. 100). The trial court did not recommend the state writ application be denied based on a procedural bar (document 20, attachment 17 at p. 221), and the Texas Court of Criminal Appeals denied the state writ application without written order (document 20, attachment 7). It does not appear the state court relied on a procedural bar. Further, respondent does not raise any procedural bar to petitioner's federal petition.

Even if the Court were to assume, for the sake of argument, that some sort of procedural bar does exist, petitioner's actual innocence claim fails. To establish a claim of actual innocence, petitioner would need to demonstrate his innocence through newly discovered evidence that was unknown to him and was not discoverable through due diligence at the time of trial. *Lucas v. Johnson*, 132 F.3d 1069, 1076 (5th Cir. 1998). Petitioner has not presented any evidence that could not have been readily available at trial. Additionally, as set out in part IV(B) of this recommendation, petitioner's evidence does not demonstrate innocence.

*B. Actual innocence*

In addition to arguing actual innocence to avoid a procedural bar, petitioner raises a free-standing claim that newly discovered evidence shows he is actually innocent of possession of a prohibited weapon. Petitioner contends his exhibits show the device he possessed is commercially available to the general public for self-defense. A freestanding actual innocence claim is not cognizable on federal habeas review. *See Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993). The only time the federal habeas corpus court can consider an actual innocence claim is when the petitioner is attempting to have the Court review, on the merits, an otherwise procedurally barred claim. *See Schlup v. Delo*, 513 U.S. 298, 314, 115 S.Ct. 851, 860, 130 L.Ed.2d 808 (1995).

Petitioner's actual innocence claim is a freestanding claim for relief, and, as such, it is not cognizable. *See Herrera*, 506 U.S. at 400, 113 S.Ct. at 860. In addition, petitioner's evidence is not newly discovered, and petitioner has not shown he is actually innocent of the offense.

Under the Texas penal statutes in effect when petitioner committed the offense on January 14, 2010, "[a] person commits an offense if he intentionally or knowingly possesses . . . a chemical dispensing device . . . ." Tex. Penal Code § 46.05(a)(8) (in effect September 1, 2005 to August 31, 2011). "'Chemical dispensing device' means a device, other than a small chemical dispenser sold commercially for personal protection, that is designed, made, or adapted for the purpose of dispensing a substance capable of causing an adverse psychological or physiological effect on a human being." Tex. Penal Code § 46.01 (in effect September 1, 2009, to August 31, 2011).

Petitioner contends exhibits 1-21 attached to his federal petition show the same device or

similar devices are sold commercially to the general public for self-defense. However, the devices in petitioner's exhibit 1, exhibit 2 page 1, and exhibit 4 appear to be advertisements for smoke grenades, and not for tear smoke CN grenades. Exhibit 2, page 2, contains a photo of a device with a caption stating "Military smoke grenade and Smith & Wesson Mighty Midget riot agent cs gas no. 98. Picked up at a flea market." However, that device purports to contain CS gas, not CN gas. Additionally, the fact that someone purports to have purchased the device at a flea market does not mean the device was sold commercially for personal protection.

Petitioner also presents what appear to be other advertisements for various devices. Petitioner's exhibits 3, 5, 6, and 7 appear to be devices for sale on an internet website. Exhibit 3 shows a 2 oz. Clear Out tear gas grenade, and Exhibit 5 shows a 6 oz. Clear Out tear gas grenade. Exhibit 6 shows both the 2 oz. and 6 oz. tear gas grenades, along with other devices. These exhibits state the devices shown contain OC/CS blended gas. These exhibits do not purport to be devices containing CN, which is what petitioner possessed. Additionally, exhibit 6 refers to the 2 oz. tear gas grenade and the 6 oz. tear gas grenade each as a "Police Issue Grenade," and they are not portrayed as being for personal protection. Exhibit 7 also shows the 6 oz. Clear Out tear gas grenade in the category of "self defense." Exhibit 7 does not indicate the device contains CN, and it refers to the device as a "Police Issue Grenade," and it does not state the device is for personal protection.

Exhibits 8, 9, and 11 appear to be advertisements for pepper spray, and Exhibit 10 may be information provided by a seller of pepper spray and OC/CS tear gas. Exhibits 8-11 do not refer to CN tear gas.

Exhibit 12 is defendant's exhibit 1 from the trial, which shows a can of pepper spray

purchased at a store by a defense witness, Ted Campos, who was a private investigator with a law enforcement background. Reporter's Record Vol. 3, pp. 122-31. Exhibit 13 appears to be another photo of the pepper spray that was introduced as defendant's exhibit 1 at trial. However, that device contained pepper spray, and not CN. The pepper spray purchased by Mr. Campos was designed to spray an individual, and, unlike a canister, it was not designed to disperse a large group of people. *Id.* at 124-25.

Exhibit 14 is a portion of an appellate court decision, *Spradley v. State*, 2003 WL 21282468 (Tex. App. — Houston [14th Dist.], June 5, 2003), holding there was sufficient evidence that a large can of pepper spray, containing 10% OC spray and labeled "Law Enforcement Use Only," was a prohibited chemical dispensing device. The Court in *Spradley* did not hold that a CN tear gas grenade as possessed by petitioner was not a prohibited chemical dispensing device.

Exhibit 15 appears to be an advertisement for pepper spray with 10% OC in sizes of .61 oz., 1.5 oz., 3.1 oz. and 13 oz., but the devices do not state they contain CN tear gas. Also, the smallest size is referred to as a "personal size," and the three largest sizes are referred to as "police sizes."

Exhibit 16 appears to be an advertisement for pepper spray with concentrations from .2% to 1.3%. The advertisement does not state the devices contain CN tear gas, and the advertisement refers to the smaller sizes as "personal" and the largest sizes as "police." The advertisement also lists available sprays containing 10% OC and other sprays containing 2% OC. However, the advertisement does not state the sprays contain CN tear gas.

Exhibits 16A, 16B, 16C, and 21 appear to be printed out discussions among unidentified

people on an internet forum about tear gas grenades. These exhibits do not establish it is legal to possess a CN tear gas grenade of the type possessed by petitioner.

Exhibits 17 and 18 purport to be information regarding the purchase of products provided by the commercial vendor whose advertisement of pepper spray and OC spray is exhibit 15. Petitioner asserts the exhibits show no restriction on the purchase of tear gas. However, the tear gas that appears to be advertised in exhibit 15 is not CN gas. Also, exhibit 18 states the company "restricts the sale of selected products such as, but not limited to" various items. Although tear gas is not listed, the restriction states it is not limited to the listed items. Additionally, exhibit 18 states, "When you place an order for products that are subject to any legal restrictions, you warrant to us that you are authorized to make such purchase, and you are in compliance with all local, state and federal laws concerning same. As a double check to protect the public, please understand that we may verify employment of any person ordering such items." Therefore, it is not clear from exhibit 18 that the company sells tear gas of all sizes to the general public in Texas, and petitioner has not shown the company sells CN tear gas.

Exhibit 19 appears to be from a catalog showing pepper spray. The exhibit does not state the devices contain CN tear gas. Also, the catalog purports to be for "Police and Homeland Security Equipment."

Exhibit 20 is an e-mail from petitioner's sister to petitioner stating she could not find anything showing a person has to be in law enforcement to purchase canisters. The e-mail is not notarized or verified, and the e-mail does not show CN tear gas is commercially available for personal protection in Texas.

Petitioner has not shown his exhibits are newly discovered, because he has not shown

they could not have been discovered through due diligence at trial or before trial. Petitioner has not shown he is innocent of the offense, because the exhibits do not show the "tear smoke CN grenade" he possessed was a small chemical dispenser sold commercially for personal protection. Petitioner has not shown the state habeas court's rejection of this claim was unreasonable.

### C. Ineffective assistance of trial and appellate counsel

Petitioner contends he received ineffective assistance of trial counsel, because trial counsel did not present, at trial, exhibits 1-21, which petitioner has included in support of his federal habeas petition, to show the device he possessed was a small, commercially available chemical dispensing device used for self-defense. Petitioner contends he received ineffective assistance of appellate counsel, because appellate counsel did not present exhibits 1-21 in a motion for new trial or on appeal.

#### 1. Standard - trial counsel

The proper standard for reviewing a claim of ineffective assistance of counsel is enunciated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the two-pronged *Strickland* standard, petitioner must show defense counsel's performance was both deficient and prejudicial. *Id.* at 687. An attorney's performance was deficient if the attorney made errors so serious the attorney was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution. *Id.* That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession. A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689. Strategic choices

made after a thorough investigation of both the law and facts are "virtually unchallengeable." *Id.* at 690-91. This is a heavy burden which requires a "substantial," and not just a "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *see also Cullen v. Pinholster*, 563 U.S. ___, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011).

Additionally, petitioner must show counsel's deficient performance prejudiced the defense. To establish this prong, petitioner must show counsel's errors were so serious as to deprive petitioner of a fair trial. *Strickland*, 466 U.S. at 687. Specifically, to prove prejudice, petitioner must show "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88 n. 4. (5th Cir.1993). If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Strickland*, 466 U.S. at 697.

When a state prisoner asks a federal court to set aside a conviction or sentence due to ineffective assistance of counsel, the federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law and that presumes defense counsel's performance fell within the bounds of reasonableness. *Burt v. Titlow*, ___ U.S. ___, 134 S.Ct. 10, 13, 187 L. Ed. 2d 348 (2013). Petitioner's ineffective

assistance of counsel claims were adjudicated on the merits in a state court proceeding, and the denial of relief was based on a factual determination that will not be overturned unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). A state-court factual determination is not unreasonable merely because the federal court would have reached a different conclusion in the first instance. *Burt v. Titlow*, 134 S.Ct. at 15. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct and the petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Canales v. Stephens*, 765 F.3d 551, 563 (5th Cir. 2014). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, as in this case, it is an adjudication on the merits, and is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997); *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (recognizing this Texas state writ jurisprudence).

2. Standard - appellate counsel

To make out a claim of ineffective appellate counsel, a petitioner must meet the two-prong test of *Strickland v. Washington*. *Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). To establish deficient performance, a petitioner must show that counsel unreasonably failed to discover and raise nonfrivolous issues. *Id.* To establish prejudice, the petitioner "must show a reasonable probability that, [but for counsel's error], he would have prevailed on appeal." *Id.* at 285-86 (citing *Strickland,* 466 U.S. at 694). To do this, he must show "that a particular nonfrivolous issue was clearly stronger than issues that counsel did present." *Id.* at 288. The federal court is required to use the "doubly deferential" standard of

review that credits any reasonable state court finding of fact or conclusion of law and that presumes defense counsel's performance fell within the bounds of reasonableness. *Burt v. Titlow,* 134 S.Ct. at 13.

### 3. Analysis of ineffective assistance of counsel claims

Petitioner's trial counsel also represented petitioner on appeal. In counsel's affidavit in response to the state habeas corpus application he averred he investigated the device petitioner possessed and its availability on the internet (document 20, attachment 13 at p.112. A defense witness, Ted Campos, purchased another device at counsel's request, and that device was introduced into evidence at trial. *Id.* Counsel averred he spent numerous hours conducting legal research before trial and on appeal regarding whether petitioner's possession of the device was lawful. *Id.* at pp. 112-13.

Through Mr. Campos, counsel presented evidence that a pepper spray device was commercially available. For the reasons petitioner did not show actual innocence, as explained previously in part IV(B) of this recommendation, petitioner has not shown that the presentation of exhibits 1-21 at trial, in a motion for new trial, or on appeal would have demonstrated that the CN tear gas grenade petitioner was convicted of possessing met the statutory exception and was not prohibited. Petitioner has not shown he received ineffective assistance of trial or appellate counsel. Petitioner has not shown the state court's rejection of this claim was unreasonable.

### D. Conflict with federal law

Petitioner contends the application of Tex. Penal Code § 46.05(a)(8) to the facts of his case violated 18 U.S.C. § 229C. Title 18 U.S.C. § 229 makes it unlawful for someone "to develop, produce, otherwise acquire, transfer directly or indirectly, receive, stockpile, retain,

own, possess, or use, or threaten to use, any chemical weapon." For purposes of § 229, "chemical weapon" means

> (A) A toxic chemical and its precursors, except where intended for a purpose not prohibited under this chapter as long as the type and quantity is consistent with such a purpose.
>
> (B) A munition or device, specifically designed to cause death or other harm through toxic properties of those toxic chemicals specified in subparagraph (A), which would be released as a result of the employment of such munition or device.
>
> (C) Any equipment specifically designed for use directly in connection with the employment of munitions or devices specified in subparagraph (B).

18 U.S.C. § 229F(1).

> The term "toxic chemical" means any chemical which through its chemical action on life processes can cause death, temporary incapacitation or permanent harm to humans or animals. The term includes all such chemicals, regardless of their origin or of their method of production, and regardless of whether they are produced in facilities, in munitions or elsewhere.

18 U.S.C. § 229F(8). Section 229C provides, "Nothing in this chapter shall be construed to prohibit any individual self-defense device, including those using a pepper spray or chemical mace."

Petitioner asserts § 229C makes tear agents, including CN gas, legal to possess in the United States. He argues the federal statute controls under the Supremacy Clause of the United States Constitution and under federal preemption.

"[F]ederal preemption is based on the Supremacy Clause, which provides that federal law 'shall be the supreme Law of the Land.' U.S. Const. art. VI, cl. 2." *Simmons v. Sabine River Authority Louisiana*, 732 F.3d 469, 473 (5th Cir. 2013). The Fifth Circuit has explained federal preemption as follows:

> Preemption can take multiple forms: Congress can expressly preempt state law in federal statutory language, or it can impliedly preempt state law. *Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). Implied preemption can take the form of field preemption, where federal law "is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation," *id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)), or "the federal interest [in the field] is so dominant" that it "preclude[s] enforcement of state laws on the same subject," *id.* (quoting *Rice*, 331 U.S. at 230, 67 S.Ct. 1146). Implied preemption can also take the form of conflict preemption: (1) where complying with both federal law and state law is impossible; or (2) where the state law "creates an unacceptable 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Wyeth* [*v. Levine*, 555 U.S. 555, 129 S.Ct. 1187, 1193–94, 173 L.Ed.2d 51 (2009)] (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).

*Castro v. Collecto, Inc.*, 634 F.3d 779, 785 (5th Cir. 2011). For cases involving historic police powers of the states, courts begin with the assumption that those state police powers were not meant to be superseded by a federal statute unless that was the clear and manifest purpose of Congress. *Wyeth v. Levine*, 555 U.S. at 565.

No statute related to § 229 or § 229C contains any express provision that Congress preempted state law in this area. Therefore, there is no express preemption.

Section 229 and related statutes were implemented to fulfill the United States' obligations under the Chemical Weapons Convention. *Bond v. United States*, ___ U.S. ___, 134 S. Ct. 2077, 2083-85, 189 L.Ed.2d 1 (2014). In *Bond*, a person was convicted under § 229 for putting chemicals on another person's car, mailbox, and door knob. Consistent with federalism principles, the Supreme Court presumed the statute did not preempt state law. *Id.* at 2088-89. The Court noted the punishment of criminal activity is traditionally within a state's authority. *Id.* at 2089. The Court concluded the federal statute, which was enacted against a backdrop of acts of war, assassination, and terrorism, was not meant to reach the purely local crime committed in

*Bond*. Because the Supreme Court recognized that § 229 and related statutes were not meant to cover every use or possession of what could be a "chemical weapon" under the statute, the statute did not comprehensively cover all aspects of the subject, and there is no general field preemption of state law in that area.

There is also no conflict between the federal and state statutes such that preemption is necessary. The federal statute states it does not prohibit individual self-defense devices, including those using a pepper spray or chemical mace. That does not mean Congress meant to provide that all such devices are legal. Instead, the statute excludes those devices from coverage under a federal statute meant to implement the Chemical Weapons Convention. That is consistent with the Supreme Court's holding in *Bond* that the statute was not meant to reach purely local criminal matters. Moreover, the fact that some particular device may violate state law, but not violate a federal statute concerning the Chemical Weapons Convention, does not mean the state law creates an unacceptable obstacle to the accomplishment and execution of the full purposes and objectives of Congress. The core concerns of the Chemical Weapons Convention remain intact under § 229, even if possession of some particular device is a violation of state law.

Moreover, there is no apparent conflict between § 229C and § 46.05(a)(8). Section 229C excludes "an individual self-defense device, including those containing pepper spray and mace. Section 46.05(a)(8) excludes "a small chemical dispenser sold commercially for personal protection, that is designed, made, or adapted for the purpose of dispensing a substance capable of causing an adverse psychological or physiological effect on a human being." These provisions are not at odds with each other.

Petitioner has not shown that the federal statute (§ 229C) preempts the state statute (§ 46.05(a)(8)). Petitioner has not shown the state court's rejection of this claim was unreasonable.

### E. Violation of Second Amendment

Petitioner's last claim is that his conviction violated his Second Amendment right to keep and bear arms. Petitioner contends his right to possess the device was protected by the Second Amendment under *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L.Ed.2d 637 (2008). Petitioner argues the Second Amendment applies to all devices that are bearable arms, even those that were nonexistent when the Second Amendment was drafted.

The Second Amendment protects the right to keep and bear arms for the purpose of self-defense. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 749-50, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). The Second Amendment provides for the right "to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635. The "central holding of *Heller* [was] that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *McDonald*, 561 U.S. at 780. "*Heller*, while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *McDonald*, 561 U.S. at 786. The "sorts of weapons protected" by the Second Amendment are those "in common use" and do not include "dangerous and unusual weapons." *Heller*, 554 U.S. at 627. "[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Id.* at 625.

The tear CN smoke grenade possessed by petitioner was designed for control of riots and crowds. The state court could have reasonably concluded the device was not designed for personal self-defense, that it was not a weapon typically possessed by law-abiding citizens for lawful purposes, and that it was dangerous and unusual. Petitioner has not shown the possession of the device was protected by the Second Amendment. Petitioner has not shown the state court's rejection of this claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts" under 28 U.S.C. § 2254(d).

## V.
## RECOMMENDATION

Petitioner has failed to present any cognizable or meritorious claim warranting federal habeas corpus relief. Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner THOMAS J. STAUDER, II, be DENIED.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 19th day of February, 2016.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

# \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).